

T 510.725.3000  F 510.725.3001

Danielle Smith
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Ave. #202
Berkeley, CA 94710
www.hbsslaw.com

danielles@hbsslaw.com

July 26, 2018

**Via ECF and Electronic Mail**
Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl St., Courtroom: 15D
New York, NY 10007-1312

Re:  *Anton Colbert, et al. v. Rio Tinto PLC, et al.* - **Case No. 1:17-cv-08169 -AT-DCF**

Dear Judge Torres:

Pursuant to your Honor's Individual Practices in Civil Cases, we are writing on behalf of Lead Plaintiff Anton Colbert to respond to Defendant Thomas Albanese's ("Albanese") first pre-motion letter dated June 21, 2018. Plaintiffs hereby incorporate the arguments set forth in separate letters to Defendants Rio Tinto PLC and Rio Tinto Limited (together "Rio Tinto" or "RTCM") and Guy Elliot ("Elliot"). Plaintiffs do not agree that there are adequate grounds for dismissal of this action or of any claims against Albanese. For the reasons and authority cited below, Plaintiffs' complaint is timely and the allegations are sufficiently pled as filed.

Plaintiffs reject and disagree with Albanese's characterizations of the Complaint's factual allegations. After an earlier disastrous multibillion dollar acquisition in which Albanese (Rio Tinto's then-CEO) and Elliott (then-CFO) were denied bonuses, Albanese and Elliott pushed for Rio Tinto's August 2011 acquisition of certain of Riversdale Mining Limited ("Riversdale") coal tenements in Mozambique for approximately $3.7 billion. Ultimately, by January 15, 2013, the Board determined the asset ("RTCM") was severely impaired and should be written down by billions of dollars to $611 million. Worse, Rio Tinto ended up selling RTCM for just $50 million (less than two percent of the original $3.7 billion acquisition price), and recorded hundreds of millions of dollars in additional impairment charges to reduce RTCM's publicly reported valuation.

Unbeknownst to investors, and only recently revealed by the SEC in its complaint filed on October 17, 2017,[1] Albanese and Elliott knew of material problems adversely affecting RTCM's multi-billion dollar publicly reported valuation within months of the acquisition, and they were aware of additional problems with RTCM requiring an impairment analysis and material

---

[1] *Securities and Exchange Commission v. Rio Tinto Plc, Rio Tinto Limited, Thomas Albanese, and Guy Robert Elliott*, Case No. 1:17-cv-07994 (SDNY).

SEATTLE  BOSTON  CHICAGO  COLORADO SPRINGS  LOS ANGELES  NEW YORK  PHOENIX  SAN DIEGO  SAN FRANCISCO  WASHINGTON, D.C.

010716-11 1047075 V1

July 26, 2018
Page 2

reduction of its publicly reported value. But instead, throughout the Class Period, Albanese and Elliott thwarted the required impairment analysis required by the relevant accounting rules, actively hid the true nature and effect of adverse RTCM developments from the Company's Board of Directors, and continued to promote RTCM's worth to investors (Compl. ¶¶ 3 and 34-35; 44-49; 70-72).

**Albanese Made Actionable Misstatements and Omissions**

The Complaint's factual allegations specify the fraudulent statements and omissions made by Albanese, describe when and where the fraudulent statements and omissions were made, and explain why the statements and omissions were fraudulent (Compl. ¶¶ 34-40, 45-46, 50-55, 57-59, 63-69, and 70-72). Albanese "made" statements in Rio Tinto's March and August 2012 Bond Offering documents that incorporated by reference Albanese's misrepresentations and omissions from the company's 2011 Annual Report (Compl. ¶¶ 37-43, 56-59), thus making the offering materials misleading by virtue of Albanese's own misrepresentations and omissions. *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 483 (S.D.N.Y. 2012), aff'd, 525 F. App'x 16 (2d Cir. 2013) (analyzing for purposes of *Janus* which entity "had ultimate authority over statements made in its SEC filings incorporated by reference in the offering materials"). Albanese is liable for fraudulent misrepresentations and omissions foreseeably incorporated by reference into subsequent filings.

For the reasons stated in Plaintiffs' concurrently submitted responses to Rio Tinto's and Guy Elliot's first pre-motion letters, the complaint is timely. The Complaint alleges that Albanese made specific misstatements and omissions well into the class period. Albanese misleadingly presented barging as a viable option in November 2012, for instance, when he knew, was reckless in not knowing, or should have known that the only transportation option that was currently on the table was the use of existing rail, which had extremely limited capacity. Compl. ¶ 71. During the Class Period, and well into the five-year repose period defined by Defendants, Defendants repeated and reiterated materially misleading statements and omissions. In the Third quarter 2012 operations review, for instance, republished on November 2, 2012 as part of Defendants' 6-K and judicially noticable, Defendants continued to tout a "strong set of production results", described the business as "resilient" and "performing strongly", continued to overstate the production of hard coking coal; described the "ramp up" of production in the Moatize Basin and the "expan[sion of railway] capacity", among other misleading statements, including direct quotes from Albanese, all with full knowledge of the severe adverse facts undermining each of these representations (Compl. ¶¶ 8-9; 31; 34; 47-49; 55; 67; 70; 72).

As alleged in the complaint, Albanese provided a materially misleading response when directly asked if barging was still on "the agenda". Specifically, Albanese suggested that barging was still an option when he knew, was reckless in not knowing, or should have known that Rio Tinto was at risk of losing its mining license if it continued to pursue barging, which it did not do, and that he personally rejected building a new rail line at the Brisbane Meeting. Compl. ¶ 71.

Albanese's reference to the first shipment of coal from Mozambique was misleading because it was in the context of discussing the long-term optionality in Rio Tinto Energy Product Group's ("RTE") portfolio, and included statements describing the Moatize Basin as a long-term

July 26, 2018
Page 3

opportunity with the potential to grow beyond 25 million tons of coal per year. These statements were misleading because at the time of these statements, Albanese knew, was reckless in not knowing, or should have known that the ability to transport any coal to market was severely limited because, among other things, RTCM's barging proposal had been rejected by the Government of Mozambique, Albanese had personally rejected the $16 billion new railroad, and existing rail had extremely limited capacity. Compl. ¶ 72.

**The Complaint Adequately Alleges Scienter and Recklessness**

Scienter may be alleged generally. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Plaintiffs need only allege facts to show that a defendant had both motive and opportunity to commit fraud, or facts indicating conscious misbehavior or recklessness. *See SEC v. Egan*, 994 F. Supp. 2d 558, 564-65 (S.D.N.Y. 2014). Here, the Complaint amply satisfies that standard.

In this case, Albanese and Elliott lobbied for Rio Tinto's $3.7 billion acquisition of coal tenements in Mozambique from Riversdale Mining Limited ("Riversdale") in in August 2011. Compl. ¶ 3. The key assumptions to the acquisition were 1) Rio Tinto's ability to transport 30 million tons of coal from the Riversdale tenements to market by barging it down the Zambezi River to a port on the Indian Ocean; 2) Rio Tinto's ability to transport approximately 12 to 15 million tons of coal per year by existing rail lines to the Beira port, where it could then be shipped to markets; and 3) that 30 million of the 45 million tons would be high-value hard coking coal (Compl. ¶¶ 29-30).

Within two months of the acquisition – by October 2011 – Defendants learned from their internal experts that barging capacity was limited to 10 million tons per year and that barging was significantly more expensive than had been assumed previously. Compl. ¶ 31.

Within three months of the acquisition – by November 2011 – the Government of Mozambique informed Defendants that their Zambezi River barging proposal would be rejected. Compl. ¶ 34.

Within nine months of the acquisition – by May 2012 – Albanese and Elliott learned that the existing rail infrastructure could only transport approximately 2 million tons of coal per year, and no viable alternative existed. Compl. ¶¶ 47-49; 67; 70. In addition, Albanese and Elliott also learned that there was a significant negative impact on value stemming from issues related to the coal quality, e.g., a less-favorable split between hard coking and thermal coal. Compl. ¶¶ 47-48; 55; 70; 72.

Despite knowing about the material problems adversely affecting the underpinnings of RTCM's multi-billion dollar publicly reported valuation, Defendants did not test RTCM for impairment pursuant to Rio Tinto's accounting policies and the provisions of IAS 36. Compl. ¶¶ 3; 35; 39-40; 46; 54; 58. The complaint also incorporates by reference the allegations set forth in the

July 26, 2018
Page 4

related SEC action,[2] that Albanese and Elliott approved the RTCM acquisition in the face of known risks, understood that "further impairments on the heels of Alcan would reflect a 'pattern of evaluation failure or performance failure," knew they were on the hook for RTCM's failure, and were thus motivated to suppress bad news about the new acquisition. SEC Complaint ¶¶ 42-47; 52-60. *See* Compl. ¶ 3.

The Complaint sufficiently alleges that Albanese engaged in a fraudulent scheme to omit or misrepresent material information to investors in Rio Tinto's Bond Offering Materials (Compl. ¶¶ 56-59), Interim Report (*Id*. at ¶¶ 50-55), and to conceal information from its own auditors (*Id*. at ¶¶ 36, 56-59, 62-75), among other things. The Complaint sufficiently alleges that Defendants made fraudulent statements in its 2011 Annual Report as part of RTCM's August 2012 Bond Offering Materials (*Id*. at ¶¶ 56-59), and specifies the fraudulent statements and omissions at ¶¶ 58-59. The Complaint sufficiently alleges that Albanese omitted material information from Rio Tinto's August 9, 2012 Interim Report (*Id*. at ¶¶ 50-55), and specifies the fraudulent statements and omissions at ¶¶ 51-54. The complaint also incorporates the allegations set forth in the related SEC Complaint at ¶¶ 1, 3, 5, 11, 89-102, 115, 118, 122-138, 143, and 153-160). *See* Compl. ¶ 3.

Albanese certified the 2011 Annual Report but knew, was reckless in not knowing, or should have known that his certification was "false because the Annual Report continued to value RTCM at more than $3 billion even though there was no viable plan to transport more than a small fraction of the coal that would need to be sold to support that valuation" (Compl. ¶ 37). On August 8, 2012, Albanese materially misrepresented to investors that the work RTCM had been doing over the past 12 months indicated that the company probably had even "more potential in total as [it went] forward," and that the Moatize was truly a world-class basin coal deposit (Compl. ¶ 53), despite knowing as early as December 2011 that the Mozambique government rejected RTCM's barging proposal (Compl. ¶¶ 45, 59, 72), that RTCM had no new barging proposal (Comp. ¶¶ 32, 55, 66, 72), and knowing by May 2012 that RTCM's value was negative $680 million (Compl. ¶¶ 48, 55, 70). Accordingly, the Complaint pleads scienter and recklessness sufficiently.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP


By     /s/ Danielle Smith
          Danielle Smith

*Lead Counsel for Plaintiffs*

---

[2] *Securities and Exchange Commission v. Rio Tinto Plc, Rio Tinto Limited, Thomas Albanese, and Guy Robert Elliott*, Case No. 1:17-cv-07994 (SDNY) ECF No. 1 ("SEC Complaint").