N.Y.S.D. Case # 17-cv-8169(AT)

19-2711-cv
*Colbert v. Rio Tinto*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of August, two thousand twenty.

Present:
>BARRINGTON D. PARKER,
>DEBRA ANN LIVINGSTON,
>MICHAEL H. PARK,
>>*Circuit Judges*,

_____

ANTON COLBERT, Individually and on Behalf of All Others Similarly Situated,

>*Plaintiff-Appellant*,

v.                                                          19-2711-cv

RIO TINTO PLC, RIO TINTO LIMITED, THOMAS ALBANESE, GUY ROBERT ELLIOTT,

>*Defendants-Appellees.*

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 06 2020

| | |
|---|---|
| For Plaintiff-Appellant: | STEVE W. BERMAN (Reed R. Kathrein, Hagens Berman Sobol Shapiro LLP, Berkeley, CA, *on the brief*), Hagens Berman Sobol Shapiro LLP, Seattle, WA, |
| For Defendants-Appellees Rio Tinto PLC and Rio Tinto Limited: | LAWRENCE J. ZWEIFACH (Mark A. Kirsch, Jennifer L. Conn, Avi Weitzman, Gibson, Dunn & Crutcher, LLP, New York, NY, Richard W. Grime, Kellam M. |

1

CERTIFIED COPY ISSUED ON 08/06/2020

|  |  |
|---|---|
|  | Conover, Gibson, Dunn & Crutcher LLP, Washington, DC, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY |
| For Defendant-Appellee Thomas Albanese: | SARAH LEVINE. (Donald L.R. Goodson, Jones Day, New York, NY, *on the brief*), Jones Day, Washington, DC |
| For Defendant-Appellee Guy Robert Elliot: | THEODORE V. WELLS, JR. (Walter G. Ricciardi, Geoffrey R. Chiepiga, Livia Fine, James Borod, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY |

Appeal from judgment and orders of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 4, 2019 order of the district court is **AFFIRMED** and the July 29, 2019 order is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Plaintiff-Appellant Anton Colbert ("Colbert") appeals from both a June 4, 2019 order of the United States District Court for the Southern District of New York (Torres, *J.*) granting the Defendants-Appellees' motion to dismiss Colbert's securities fraud claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and a July 29, 2019 order of the same court denying Colbert's motion for reconsideration or leave to amend his complaint. Colbert's allegations concern a $3.7 billion dollar investment that Defendant-Appellee Rio Tinto PLC ("Rio Tinto") made in coal mines in Mozambique and Rio Tinto's subsequent, alleged misrepresentations in connection with revealing the losses on this investment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

*1. Background*

In August 2011, Rio Tinto purchased the coal mining rights to several largely undeveloped areas in Mozambique for $3.7 billion. This acquisition was incorporated into Rio Tinto's corporate structure as Rio Tinto Coal Mozambique ("RTCM"). While the mines appeared promising, Colbert alleges that Rio Tinto faced several issues in its quest to make these purchases profitable. First, the areas where the mining leases were located were allegedly ill-served by transportation infrastructure, so that Rio Tinto needed a way to transport the coal to market in a cost-effective manner. Colbert alleges that Rio Tinto's valuation models for the mines addressed this issue by projecting that the majority of the coal produced each year, some 30 million tons, would be transported by barge down the Zambezi River to a port on the Indian Ocean. Second, the mines contained an unknown ratio of valuable "hard coking" coal used in steel production to less valuable thermal coal. Colbert alleges that Rio Tinto's models incorporated an assumption that 60% of the recoverable coal would be of the valuable "hard coking" variety. The validity of these two assumptions was allegedly critical to RTCM's profitability. As alleged by Colbert, both of these key aspects of the model justifying Rio Tinto's $3.7 billion purchase price proved false.

To address concerns regarding the Mozambique investment, Rio Tinto's Chief Executive Officer, Defendant-Appellee Thomas Albanese ("Albanese"), and Chief Financial Officer, Defendant-Appellee Guy Robert Elliot ("Elliott"), allegedly held an "all-hands" meeting in Brisbane in April 2012 with RTCM representatives. At the meeting, those present allegedly discussed the aforementioned issues, and Albanese and Elliott were presented with a best-case valuation under which RTCM was worth negative $680 million. According to the allegations in the complaint, the losses were not then publicly disclosed, but came to light only in January 2013

3

when Rio Tinto issued a press release stating that the company would record an "approximately US$3 billion" impairment on the RTCM mines for the transportation and coal ratio reasons described above. J. App'x at 77 ¶ 100. More specific information regarding this impairment followed in February and March in Rio Tinto's SEC filings.

The events at issue here have already been the subject of investigations by financial regulatory authorities in the U.K. and the United States, where a parallel proceeding brought by the Securities and Exchange Commission ("SEC") is still pending in the district court in front of Judge Torres. *See SEC v. Rio Tinto plc*, No. 19 Civ. 7994 (AT), 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019). In the parallel proceeding brought by the SEC, the district court denied Rio Tinto's motion to dismiss in part, holding, *inter alia*, that the SEC could proceed with a claim that a statement by Albanese in November 2012 that the area where the mines were located represented "a long-term opportunity with the potential to grow beyond 25 million tons of coal per year" violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b). *See id.* at *15–16.

Colbert filed the operative amended complaint for securities fraud on behalf of himself and a putative class of similarly situated investors on September 25, 2018, asserting claims for violations of (1) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, against all defendants, and (2) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t, against Albanese and Elliot. *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 332 (S.D.N.Y. 2019). This appeal concerns five statements that the complaint alleges were materially misleading. Following Rio Tinto's motion to dismiss the suit, the district court dismissed Colbert's claims, holding that: (1) Colbert had "abandoned his claims" with respect to, *inter alia*, the Albanese "long-term opportunity" statement later found actionable in the SEC proceeding by

4

failing to "oppos[e] the dismissal" of this statement, *id.* at 338; (2) Colbert failed to plead scienter as to his claims regarding statements in Rio Tinto's November 2012 Form 6-K that production "continued to ramp up" and statements made in a November 2012 presentation that Rio Tinto's "presence in Africa" was growing, because Colbert did not identify a specific individual who made the statements, *id.* at 338–39; (3) Albanese's statements in response to an investor question regarding barging were not misleading because, in context, these statements "did not mislead the investor into thinking that barging was a practical or realistic option at that point, and instead discussed rail transportation, which was still under consideration," *id.* at 339; and (4) Rio Tinto's February 2013 Form 8-A filing, which ultimately incorporated by reference an earlier annual report containing a pre-impairment valuation of the RTCM mines, was not misleading because, at the time of the incorporation, corrective disclosures had already been made, *id.* at 339–40.[1] Colbert sought reconsideration in the aftermath of the district court's determination, in the SEC action, that the Commission had adequately set forth a securities fraud claim as to the "long-term opportunity" statement, *Rio Tinto plc*, 2019 WL 1244933, at *15–16, but this motion was denied. Colbert timely appealed.

### 2. Legal Analysis

We review *de novo* the grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Roth ex rel. Metal Mgmt., Inc. v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

[1] Because the Section 20(a) claims were dependent on Colbert's Section 10(b) claims, the district court also dismissed these claims. *Colbert*, 392 F. Supp. 3d at 340.

5

face." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). We review the denial of a motion for reconsideration for abuse of discretion. *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010).

Here, we review the complaint to determine whether the facts as alleged adequately plead the elements of a securities fraud claim under Section 10(b) and Rule 10b–5: namely, "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). As to two of the five alleged misstatements at issue—namely, Albanese's response to an investor question regarding barging and Rio Tinto's February 2013 filing of a Form 8-A pursuant to an amended prospectus that, in turn, incorporated an earlier annual report—we affirm for substantially the reasons stated in the district court's well-reasoned opinion. *See Colbert*, 392 F. Supp. 3d at 338–39. We focus here on Colbert's claims regarding: (1) Rio Tinto's November 2012 Form 6-K and statements made in a November 2012 conference presentation; and (2) Albanese's "long-term opportunity" statement found actionable in the SEC proceeding.

  a. **The Form 6-K and Conference Statements**

On appeal, Colbert argues that the district court erred in dismissing his claims regarding statements in Rio Tinto's November 2012 Form 6-K that "[d]uring the quarter, production at the Benga mine in the Moatize Basin in Mozambique continued to ramp up" and that "[w]ork is progressing to expand capacity on the Sena railway line, which remains the system bottleneck," as well as statements made in the November 2012 conference presentation that Rio Tinto's "presence in Africa" was "growing." J. App'x at 72–73. The district court dismissed these claims for

failure to identify a specific individual who made the statements and thus a failure to plead scienter. *Colbert*, 392 F. Supp. 3d at 338–39. Colbert argues that he should be permitted to rely on the group pleading doctrine to overcome his failure to allege that any specific individuals "made" the statements in question. For its part, Rio Tinto argues that group pleading is no longer viable in the aftermath of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).[2]

We need not reach the question of the continuing viability of group pleading because we conclude that the complaint fails plausibly to allege that the statements in question were either false or materially misleading. *See, e.g.*, *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 106 (2d Cir. 1998) (noting that suits under Section 10(b) or Rule 10b–5 require the plaintiff to allege a false or misleading statement or omission). At the start, the statement at the November 2012 conference that Rio Tinto's presence in Africa was "growing" was truthful, as the mines did represent a large investment of some $3.7 billion in Africa and were but part of an even larger

---

[2] Pursuant to the group pleading doctrine, securities fraud plaintiffs have sometimes been permitted to rely on a presumption that statements in prospectuses, registration statements, or other group-published information are the collective work of the high-level individual corporate officers with direct involvement in the everyday running of a company's business. *See, e.g.*, *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 529–30 (S.D.N.Y. 2010) (describing the doctrine). This Court previously endorsed the doctrine, *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[N]o specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of securities in question") (alteration in original)), though we have pulled back from its most expansive construction, *see Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195–96 (2d Cir. 2008) (discussing scenarios which satisfy the requirements that "an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to the corporation"). Rio Tinto argues that the decisions by other Circuits rejecting the doctrine as inconsistent with the PSLRA, *see, e.g.*, *Winer Family Tr. v. Queen*, 503 F.3d 319, 334–37 (3d Cir. 2007), and the Supreme Court's decision in *Janus* give us reason to reexamine our precedent. As noted above, however, we have no need to reach these questions where, as here, the complaint fails plausibly to allege that the statements at issue are either false or misleading.

7

African investment portfolio. J. App'x at 73.³ While the mines investment may have been unwise, this is not, standing alone, enough to render the statement that Rio Tinto's presence was "growing" misleading or false. Indeed, the slide containing this statement, which is reproduced in the complaint and thus properly considered here, *see Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), contains no other content regarding the RTCM mines and thus merely identifies the mines as part of a suite of investments Rio Tinto had been making in Africa over the past few years, *see* J. App'x at 73. As such, it cannot form the basis of a claim for securities fraud.

As to the "ramp up" statements, while it may have been the case that lack of access to barging was a serious issue facing the mines, Colbert does not allege that production work was not increasing at the mines at the time this statement was made or that efforts were not underway to expand rail capacity.⁴ Colbert instead alleges that it was misleading to affirm that production was increasing when the mines' overall value had been devastated by the lack of access to barging. *See* J. App'x at 51 ¶¶ 10-12. But considered as a whole, the complaint's allegations do not support the inference that the statements were materially misleading. *See Freedman v. Value Health, Inc.*, 34 F. App'x 408, 411 (2d Cir. 2002) (summary order) (holding that statements describing significant revenue growth in a business line and describing that business line as "thriving" were not materially misleading even though the business line had suffered actual losses

---

³ Indeed, the district court held as such in the alternative on Colbert's motion to reconsider. *See* Sp. App'x at 31 n.6.

⁴ Indeed, the complaint alleges that Albanese and other top management were focused on rail transportation in the latter half of 2012. *See* J. App'x at 127 ¶ 120 (noting that Albanese was seeking partners for rail transport following the Brisbane meeting).

8

where the plaintiffs did not contend that the growth figures were false).[5]  Read in context, the "ramp up" statements merely indicate Rio Tinto's continuing expansion of production at the RTCM mines and Rio Tinto's focus on rail development as the most likely avenue for transportation of the coal at that time.  This is not a case where the information regarding the mines' valuation was necessary to make the "ramp up" statements not misleading, as these statements do not purport to state anything regarding the valuation of the mines or the access to barging, but merely describe ongoing work and the prospects for rail development.  *See Freedman*, 34 F. App'x at 411.  In such circumstances, we conclude that the district court did not err in granting the motion to dismiss as to these statements, nor in denying Colbert's motion for leave to amend.

### b. The "long-term opportunity" statement

Lastly, Colbert argues that the district court erred in holding that he had "abandoned" his allegations regarding Albanese's November 2012 statement that the Moatize Basin (where the prospective mines were located) represented "a long-term opportunity with the potential to grow beyond 25 million tons of coal per year."  *See Colbert*, 392 F. Supp. 3d at 338.  The district court held, as noted above, that Colbert implicitly abandoned this statement by failing to address

---

[5] This is especially so where, as here, there was at least one April 2012 analyst report publicly stating that the Government of Mozambique had rejected Rio Tinto's barging proposals—the very fact that Colbert asserts was concealed.  *See* ECF Doc. 67 at 14; *see also United Food & Commercial Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*, 774 F.3d 1229, 1238 (10th Cir. 2014) (stating that "a 'reasonable investor' is [not] an ostrich, hiding her head in the sand from relevant information").  Colbert argues vigorously that the Deutsche Bank report is not properly considered at the motion to dismiss stage. We disagree.  While we may not, at the motion to dismiss stage, notice the Deutsche Bank report for the truth of what it states, *i.e.*, that Mozambique had actually rejected barging or that Deutsche Bank was actually modeling the viability of RTCM absent barging, "it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original).  Thus, we can take notice of the fact that there was such coverage and reports by investment analysts in April 2012, several months before the November SEC filing in question.

9

it in his opposition to Rio Tinto's motion to dismiss. *Id.* But the court subsequently determined, in the parallel SEC action, that the SEC would be permitted to proceed on this very claim. *Rio Tinto plc*, 2019 WL 1244933, at *15–16. In the unique and limited procedural circumstances presented by this case, we agree with Colbert that the district court abused its discretion in declining to address the merits of the "long-term opportunity" statement on Colbert's motion for reconsideration.

As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage. *See, e.g.*, *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018). We have in the past expressly approved of this practice in the context of summary judgment motions, *see Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (holding that "a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims . . . that are not defended have been abandoned"), although we have less often addressed the practice in the context of a motion to dismiss.[6] Nonetheless, in dealing with abandoned arguments and motions for reconsideration, our cases are clear that we have been willing to depart from this practice in order to avoid manifest injustice. *Compare Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006) (reviewing an argument that a district court deemed waived on a motion

---

[6] Although the parties assert that we have never clarified the standard of review to be applied to questions of abandonment, we have typically reviewed a district court's decision that an argument was waived for abuse of discretion. *See, e.g.*, *Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018). Given our determination here that the district court abused its discretion in its resolution of Colbert's motion to reconsider, we need not further address the standard of review governing questions of abandonment on a motion to dismiss.

10

to reconsider and noting that "an appellate court has discretion to consider arguments not raised below to avoid a manifest injustice" (internal quotation marks omitted)), *with Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (explaining that district courts "may alter or amend judgment" under Rule 59(e) "to correct a clear error of law or prevent manifest injustice" (internal quotation marks omitted)). On the motion for reconsideration, the district court considered and rejected the argument that its refusal to reach the merits of the "long-term opportunity" statement constituted manifest injustice, holding that this was not the "proverbial rare case" where such injustice is present because Colbert had "strategically abandoned" this argument. *See* Sp. App'x. at 25 (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). However, in the unique scenario of this case—where the district court had already ruled that the *exact same* factual allegation was sufficient to survive a motion to dismiss in a related proceeding involving the same defendant (Rio Tinto) and the same legal claim (a violation of Section 10(b)), *see Rio Tinto plc*, 2019 WL 1244933, at *15–16—we conclude that the district court should have addressed the "long-term opportunity" statement found material in the related proceeding. *See generally Rigas*, 583 F.3d at 123 (noting that the manifest injustice standard is "highly contextual and [does] not permit easy repetition in successive cases . . . [and is] dependent on the informed intuition of the appellate panel that applies" the standard).

It should be emphasized that in reaching this conclusion we take no position on the correctness of the district court's ruling in the parallel SEC case that the "long-term opportunity" statement was sufficient to survive a motion to dismiss. *See Rio Tinto plc*, 2019 WL 1244933, at *15–16. That case continues and, should an appeal be taken, any future panel reviewing that matter may have to decide the correctness of this ruling in the first instance. Further, we do not hold that the district court must permit Colbert's claim to go forward. Indeed, on remand the

11

district court may conclude that the claim still fails due to, *e.g.*, pleading requirements specific to private securities actions and not applicable in the SEC action. *See, e.g.*, 15 U.S.C. § 78u–4(b)(4). We conclude merely that, in these unique circumstances, the district court abused its discretion on the motion for reconsideration by failing to address the adequacy of Colbert's pleading as it relates to the "long-term opportunity" statement, having already ruled that nearly identical allegations in the SEC action were adequately pled. *See Rio Tinto plc,* 2019 WL 1244933, at *15–16. Accordingly, we vacate and remand the district court's denial of Colbert's motion for reconsideration to provide the district court an opportunity to address the merits of Colbert's claim that his complaint should be permitted to proceed with regard to this statement.[7]

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the June 4, 2019 order of the district court. We **AFFIRM** in part the July 29, 2019 order of the district court, and **VACATE** and **REMAND** in part the portion of that order related to the "long-term opportunity" statement.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[7] Because we vacate the district court's holding as to Colbert's Section 10(b) claims dependent on the "long-term opportunity" statement, we also vacate the district court's dismissal of Colbert's Section 20(a) claims to the extent that dismissal was dependent on the dismissal of *all* his Section 10(b) claims. *See Colbert*, 392 F. Supp. 3d at 340.

12